## WIGGIN TERMINALS, Inc., v. UNITED STATES.

District Court, D. Massachusetts. December 14, 1928.

No. 3119.

Powers & Hall, Robert H. Montgomery, and Melville F. Weston, all of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. U. S. Atty., all of Boston, Mass.

BREWSTER, District Judge. The above-entitled petition is before the court upon the demurrer of the United States, in which it is averred that the petition and the matters contained therein are not sufficient in law to entitle the petitioner to recover in these proceedings. The petition is brought under Judicial Code, § 24 (20) as amended (28 USCA § 41), to recover an additional income and profit tax assessed upon the 1918 income, amounting to $18,274.43, based upon the disallowance of an item of $25,000 which the petitioner deducted as interest.

The material facts set forth in the petition are as follows:

In 1919 the petitioner, with its subsidiaries, the Terminal Fumigating Company and the Terminal Storage Company, filed a

consolidated return, in which it claimed as a deduction of ordinary and necessary expenses the item of $25,000 for "bankers' commissions." This item was disallowed by the Treasury Department, which treated the payment of $25,000 as a capital expenditure. Claim for refund was properly filed, and was rejected by the Commissioner of Internal Revenue.

The facts upon which the petitioner relies in support of its claim that the said sum of $18,217.14 was illegally collected, according to its declaration, are as follows:

"(13) In the fall of 1915 the petitioner determined to establish in its warehouse in Charlestown, Mass., a fumigating plant, to enable it to fumigate certain foreign cottons which a regulation of the United States government required to be fumigated upon importation. The cost of such a fumigating plant was estimated at $50,000. The petitioner applied for the necessary funds to Estabrook & Co. and Parkinson & Burr, two banking firms in Boston, Mass. These two firms agreed with the petitioner to furnish the necessary amount, not to be in excess of $50,000, in consideration of the repayment to them of their advances in that behalf, with interest at 6 per cent., and with an additional payment of a lump sum of $50,000, all to be paid out of the earnings of the fumigating plant. This agreement was entered into orally and informally, and the formal details of the transaction whereby these results were to be accomplished were left to be formulated at a later date.

"(14) In pursuance of the informal understanding, Estabrook & Co., acting in their own behalf and in behalf of Parkinson & Burr, made expenditures and entered into contracts for the erection of a fumigating plant. These expenditures began December 7, 1915, and during December, 1915, Estabrook & Co. entered into contracts with various persons, and the work of erecting the fumigating plant was immediately begun.

"(15) A plan for carrying out with proper formality the informal understanding between the petitioner and the bankers, and for assuring to the latter the repayment of the sums advanced by them for the building of the plant, with interest at 6 per cent. and with the additional sum of $50,000, was duly formulated. Pursuant to this plan, a Massachusetts corporation was organized January 31, 1916, and received a charter dated February 1, 1916. This was the Terminal Fumigating Company referred to in paragraph numbered 2 above. The authorized capital of this company was $50,000, divided into 500 shares common, par value $100, three shares of which ($300) were issued to the incorporators for cash."

On February 15, 1916, the new corporation entered into a contract with the bankers by which the latter agreed to procure from the petitioner a lease to the new corporation of the premises on which the plant was located. They further agreed to complete the plant to the extent called for by existing construction contracts, and to transfer to the new corporation at cost the completed fumigating plant, comprising fumigating chambers, tanks, containers, and other appliances, apparatus, and fixtures constituting the complete fumigating plant.

In consideration of the foregoing, the Terminal Fumigating Company was to reimburse the bankers for all expenses, incurred and to be incurred, in connection with the erection of the plant, and, in addition, to pay them the sum of $300 in cash and to issue to them $49,700 par value of the common stock of the corporation.

On the following day the petitioner entered into separate agreements with Estabrook & Co. and Parkinson & Burr, by the terms of which the bankers each agreed to acquire $25,000 par value of the stock of the Fumigating Company and to transfer that stock to the petitioner free of charge after the following conditions had occurred:

"(a) The bankers shall have been repaid with interest by Terminal Fumigating Company all advances made by the bankers to Terminal Fumigating Company.

"(b) The bankers shall have received as dividends upon the said stock sums aggregating either twenty-five thousand (25,000) dollars or the total amount of the advances by the bankers to Terminal Fumigating Company, whichever is the greater amount. * * * "

Parkinson & Burr agreed to waive their dividends under certain conditions upon request of the petitioner.

"20. The expenditures of Estabrook & Co. on February 15, 1916, amounted to $17,318.15, and contracts for the building of the fumigating plant and for alterations in the premises of the petitioner, made necessary thereby, had been entered into and partially carried out, under which Estabrook & Co. afterwards paid $29,868.71. Of this last-named sum $13,019.89 was actually expended by March 15, 1916, and the balance, $16,848.82, was actually expended by April 27, 1916. These payments were made directly to the contractors or to the persons supplying labor and materials."

The total sum advanced was $50,000 and the Fumigating Company gave the bankers four promissory notes, with 6 per cent. interest, aggregating $50,000.

"22. In accordance with their agreement the bankers transferred the fumigating plant to Terminal Fumigating Company at cost, and the petitioner gave to Terminal Fumigating Company the lease of space in its warehouse on which the plant was located, which the bankers in their agreement of February 15, 1916, had agreed to procure for it. The Terminal Fumigating Company paid the bankers $300 in cash (being an amount equal to the cash paid for the organization shares), and issued to the bankers $49,700 of its stock, as provided for in Exhibit A" (contract between the Terminal Fumigating Co. and the bankers). "This stock with the incorporators' shares was divided equally between the bankers; i. e., $25,000 to Estabrook & Co., and $25,000 to Parkinson & Burr."

In 1916 the Fumigating Company paid the $50,000 of notes, with interest, and during that year and the year 1917 Estabrook & Co. received dividends on the stock of the Terminal Fumigating Company aggregating $25,000, and thereupon transferred the stock to the petitioner in accordance with their agreement. Parkinson & Burr waived their dividends during 1916 and 1917, and on April 17, 1918, entered into a new contract with the petitioner, pursuant to which these bankers transferred to the petitioner the $25,000 par value of the stock of the Terminal Fumigating Company, to which they had hitherto held legal title. By the terms of this contract the petitioner agreed to pay these bankers $25,000, said sum to be paid after liquidating certain other obligations, not necessary to detail, out of one-half of the dividends paid on the stock of the Terminal Fumigating Company.

On December 30, 1918, the petitioner paid, out of the dividends received by it from the Terminal Fumigating Company, the $25,000 due under the agreement above referred to. This is the $25,000 referred to in the petitioner's return of .net income as "bankers' commission." The petitioner avers that the payment of $25,000 was a payment in the nature of interest, and was not a capital expenditure, and that the department erroneously disallowed it as a deduction.

Thus it appears from the foregoing that the contention of the petitioner is that the payment of the $25,000 to Parkinson & Burr, made on December 30, 1918, pursuant to the written agreement of April 17, 1918, was a payment in the nature of interest on, or a bonus for, the use of $25,000 advanced by them.

I do not need to question the argument of counsel that a bonus may partake of the nature of interest as compensation paid for the use of money, even though paid in a lump sum and after the maturity of the principal indebtedness. I do not think the argument is germane to this inquiry. It does not appear that the petitioner had the use of the bankers' money for which it paid a bonus. I think it is plain from the facts alleged that the petitioner acquired 250 shares of stock of a new corporation, namely, the Terminal Fumigating Company, and paid $25,000 therefor out of the dividends derived from the shares, thus adding to its corporate assets. The amount paid on account of the purchase price was a capital expenditure, and therefore not deductible. . I do not believe this result can be evaded by showing that the shares did not cost the bankers anything, except the services rendered in financing the erection of the fumigating plant. I have no doubt that, when the negotiations were opened, the petitioner intended to borrow money from the bankers with which to erect and equip a fumigating plant, and thereby to increase its assets. It may also be conceded that the earlier oral agreement did not contemplate the purchase by it of such a completed and equipped plant, and that the underlying purpose of all was to secure the funds necessary for the work and to provide, not only adequate protection against, but liberal compensation for, the hazards which the bankers might encounter in the undertaking. But when the parties elected to pursue the course outlined in the contract of February 15, 1916, between the new corporation, the Fumigating Company, and the bankers, and in the contract of February 16, 1916, between the petitioner and the bankers, they created the situation with which we have to deal. Out of it arose relationships and rights and obligations quite different from those existing between lender and borrower. The bankers' obligations were to complete the construction and equipment of the fumigating plant and to transfer it to the Fumigating Company. In consideration of this transfer, the Fumigating Company was to give its promissory notes for the cost thereof, and all of its capital stock was to be issued in equal shares to Estabrook & Co. and to Parkinson & Burr. When the notes had been paid, and the dividends paid on the stock of the Fumigating Company amounted to $50,000, the stockholders were then under

obligation to transfer the stock to the petitioner.

I regard as significant, if not of controlling importance, the fact that Estabrook & Co., for itself and for Parkinson & Burr, in accordance with their contractual obligations, made all the contracts for the erection and the equipment of the plant, and retained title thereto until they conveyed to the Fumigating Company. Neither the Fumigating Company nor the petitioner employed borrowed money for that purpose. They contracted to buy, and did buy, a completed fumigating plant, installed on the land of the petitioner, held by the Fumigating Company as lessee under a written lease. The Fumigating Company paid for the plant out of its earnings. It was none the less a purchase because the usual business of the grantors was that of a banker, rather than that of a contractor. Whatever was paid by the petitioner under its contract of April 17, 1918, was paid on account of the purchase price, not for the plant, but for the corporate stock, which represented ownership in the plant.

The Commissioner of Internal Revenue was justified in dealing with the legal status of the parties as it actually existed, and not as it might have existed if a different course had been pursued. The fact that the ultimate result reached was the same as would have been attained if the petitioner had borrowed money from the bankers does not, in my opinion, give to the petitioner any standing to claim that it paid Parkinson & Burr, $25,000 for the use of $25,000 advanced by them. Nor do I think that the petitioner's case is strengthened by the fact that it filed a consolidated return with the Fumigating Company. Whatever that company paid to the bankers, in addition to payments made on its notes, was paid as dividends duly declared and paid to the bankers as stockholders of record. The only substantial modification of the situation resulting from the agreement of April 17, 1918, was to change the record ownership in the 250 shares allotted to Parkinson & Burr. They elected to transfer the shares upon the petitioner's agreement to pay them the dividends declared thereon until they should amount to $25,000. This payment can be looked upon in no different light than payments of dividends to Estabrook & Co., made in 1917. I have not heard it suggested that those payments could have been deducted as interest, or payments in the nature of interest.

I have reached the conclusion that the allegations set forth in the petition, if established by proof, would not entitle the petitioner to recover in these proceedings, and consequently the defendant's demurrer is sustained.