**N. W. PUGH CO., Inc., v. HELVERING,**
Commissioner of Internal Revenue.

No. 6007.

Court of Appeals of the District of Columbia.
Argued Jan. 16, 1934.
Decided April 9, 1934.

Frederick L. Pearce, of Washington, D. C., for appellant.

E. Barrett Prettyman, Shelby S. Faulkner, Sewall Key, and John MacC. Hudson, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from a decision of the Board of Tax Appeals involving the determination of the taxable income of the petitioner, N. W. Pugh Company, Inc., for the calendar years 1926 and 1927, for one month fiscal period of January, 1928, and for the fiscal year ended January 1, 1929.

It appears that appellant company, originally incorporated under the name N. W. Pugh Company, was a Virginia corporation engaged in the operation of a department store in Roanoke. The Hancock Dry Goods Company, also a Virginia corporation, was likewise operating a department store business in Roanoke. The Pugh Company, desirous of securing additional space for the conduct of its business, negotiated with the Hancock Company for the purchase of its business. The Hancock Company occupied a building under three leases, twice the size of that occupied by the Pugh Company.

On January 9, 1926, the Pugh Company purchased the assets of the Hancock Company at a price based upon inventory; the notes and accounts payable to be assumed by the purchaser, and the notes and accounts receivable to be retained by the Hancock Company. Immediate possession was delivered to the Pugh Company, when, within a few days it was discovered that one of the Hancock Company's leases contained a provision forbidding the transfer of the lease. To avoid any difficulty that might arise by reason of the terms of this lease, a new contract was made, on January 19, 1926, providing for the purchase by the Pugh Company of all of the capital stock of the Hancock Company. In furtherance of this agreement, the Pugh Company transferred all its assets to the Hancock Company, and was dissolved on February 19, 1926. At the same time the Hancock Company, by amendment

of its charter, increased its capital stock and changed its name to the petitioner, the N. W. Pugh Company, Inc. Thereafter, the stock of the petitioner company was issued to the stockholders of the former Pugh Company, share for share.

The purchase price paid by the original Pugh Company for the Hancock Company stock was $49,740.93 more than the net value of its assets. This amount was entered on the books of petitioner company as the value of the leasehold. The market value of the leases held by the Hancock Company at the time of this transaction, having unexpired terms of 54 months, was shown by the record to be $50,000. It further appears that the value of the goodwill of the Hancock Company did not enter into the transaction. Renewals of the leases were subsequently obtained by the petitioner company at advance rentals, excepting one lease, which was extended.

Petitioner, in its returns for the taxable years involved, took deductions for exhaustion of its leases. These deductions were disallowed by respondent Commissioner, resulting in the tax deficiencies involved in this case.

Petitioner's claim is based upon section 234 (a) (7), Revenue Act of 1926 (26 USCA § 986 (a) (7), and section 23 (k), Revenue Act of 1928 (26 USCA § 2023 (k), which permitted as a deduction from gross income "a reasonable allowance for the exhaustion * * * of property used in * * * business." It is conceded that the leases were used in business, and that, as such, they were subject to exhaustion; but the question upon which the Commissioner and the Board turned this case was on the ground that there is no basis shown for exhaustion of these leases under section 204 (a), Revenue Act of 1926 (26 USCA § 935 (a), which provides that the basis for property acquired, subsequent to February 28, 1913, shall be its cost.

The contention of the respective parties is stated in the opinion of the Board, as follows:

"Respondent contends that the leases have no cost basis for the reason that they were acquired in the first instance by the Hancock company without cost; that they remained the property of that company, unaffected by the purchase of its capital stock; and that the transaction gave rights to no new basis whereby a revaluation of the company's assets was permissible for the purpose of computing exhaustion allowance for existing leases. In short, he contends that the intervening events were of no consequence."

We think this holding is correct. When the original Pugh Company, to avoid difficulties that might arise because of the restrictions in one of the leases against transfer, abandoned its purchase of the assets of the Hancock Company, and instead, purchased all of the stock of the Hancock Company, it did not by that transaction acquire the leases of the Hancock Company. The leases, as well as other assets, remained the property of and belonged to the Hancock Company. The original Pugh Company became, by the transaction, merely the sole stockholder of the Hancock Company. As stockholder, it acquired no title or interest in the leases as such. Eisner v. Macomber, 252 U. S. 189, 208, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Rhode Island Hospital Trust Company v. Doughton, 270 U. S. 69, 81, 46 S. Ct. 256, 70 L. Ed. 475, 43 A. L. R. 1374.

In other words what occurred was this: The nonassignability of one of the leases changed the plan of purchase by the Pugh Company of the assets of the Hancock Company. To avoid this obstacle, the purchase of the stock of the Hancock Company was made, the assets of the original Pugh Company were transferred to the Hancock Company, and the Pugh Company was dissolved and went out of business. The charter of the Hancock Company was amended on February 19, 1926, increasing the capital stock and changing its name to the petitioner company, and the stock was distributed to the stockholders of the original Pugh Company. Thus it will be observed that although the purchase of the assets of the Hancock Company was frustrated, the same end was accomplished by the method adopted; except that in fact the assets of the Hancock Company were not purchased, but only the stock. Looking through, and ignoring mere corporate form, the substance of the transaction was a purchase of stock and not of assets; and what was actually done, rather than what might have been done, must govern for income tax purposes. United States v. Phellis, 257 U. S. 156, 172, 42 S. Ct. 63, 66 L. Ed. 180; Wiggin Terminals v. United States (D. C.) 29 F.(2d) 576.

As the sole stockholder, the original Pugh Company, acquired no interest in the leases, they were still owned and held by the Hancock Company. No attempt was made to transfer the assets of the Hancock Company to the petitioner company or to dissolve

the Hancock Company and put it out of business. The fact that one of the leases could not be transferred may account for the continuation of the Hancock Company under a new name and with the same stockholders. The $49,740.93 charged as the cost of the leases was in fact absorbed in the additional stock issued under the amended charter of the Hancock Company, and passed as such to the stockholders of the original Pugh Company. It logically follows, therefore, that no cost price has been established upon which the value of the leases could be based for the allowance of depreciation in this company's taxable return.

The decision of the Tax Board is affirmed.