# HIMELHOCH BROS. & CO. v. COMMISSIONER OF INTERNAL REVENUE.

## No. 6912.

Circuit Court of Appeals, Sixth Circuit.

April 8, 1936.

As Amended on Denial of Rehearing June 4, 1936.

A. J. Levin, of Detroit, Mich. (Butzel, Levin & Winston, of Detroit, Mich, on the brief), for petitioner.

Helen R. Carloss, of Washington, D. C. (Frank J. Wideman and Sewall Key, both of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Petition to review an order of the United States Board of Tax Appeals redetermining deficiencies in income tax. The Board found that there was no deficiency for the fiscal year ended January 31, 1924, but for the fiscal years ended January 31, 1925, 1926, 1927 and 1928, it determined deficiencies in the amounts of $3,310.02, $2,548.25, $3,674.55, and $3,656.18, respectively. 26 B.T.A. 541.

It is conceded here that section 204 (c) of the Revenue Act of 1924 (43 Stat. 260),

as applied to property acquired before the effective date of the act, is constitutional, and that the deficiency determined against the Washington Arcade Company, an affiliate, should be assessed against petitioner. The principal question is whether the Board applied an erroneous basis of taxation. This contention necessitates a review of the facts.

On April 14, 1913, Himelhoch Brothers and Company was a partnership engaged in retail business in Detroit, Michigan. At that time it acquired from John F. Prentis a twenty-year lease beginning April 1, 1913, the consideration for which was the rents therein stipulated.

In order to obtain larger quarters, in January, 1918, the partnership acquired from Frank J. Hecker a thirty-year lease on the Washington Arcade Building, beginning September 1, 1922. In January, 1922, Wolf Himelhoch, one of the partners, died, and a new partnership was formed under the same name, the partners all being members of the same family, and including certain beneficiaries under the will of Wolf Himelhoch.

On March 21, 1922, the partnership sold the Prentis lease to the J. L. Hudson Company, subject to the right of the partnership to occupy the premises until April 1, 1923, after which time the partnership was discharged from any obligation under the lease. The J. L. Hudson Company agreed to pay $480,000 in monthly installments of $4,000, without interest, commencing April 1, 1923, and assumed the rental payments due under the lease after that date. All payments due under the contract have been made promptly as specified.

Petitioner was incorporated on July 29, 1922. All of the assets of the partnership excepting the Hecker lease and the Hudson agreement were transferred to petitioner for its capital stock, which was issued to the partners in proportion to their partnership interests. At the same time the Washington Arcade Company was organized with a capital stock of $10,000, which was issued to the partners in proportion to their partnership interests and in exchange for the Hecker lease.

The Washington Arcade Company did not have sufficient funds to make the extensive improvements to the Washington Arcade building which were necessary for petitioner's business, and therefore arranged with the Union Trust Company to sell an issue of $480,000 of its six per cent.

notes at the price of ninety-eight per cent. of the face amount. The sale was authorized by the stockholders on February 19, 1923. An agreement was executed on February 20, 1923, as of March 1, 1923, between the Washington Arcade Company, all of the former Himelhoch partners, and the Union Trust Company, whereby the sale of the notes was consummated and the Hudson agreement and the Hecker lease were assigned to the Union Trust Company to secure the payment of the notes.

The Washington Arcade Company had previously agreed to issue its capital stock in exchange for an assignment of the Hudson agreement. At a meeting of its stockholders held March 15, 1923, a resolution was adopted which provided for an increase of the no par value common stock from 10,000 to 18,680, and for its division proportionally among the stockholders in consideration of the transfer to the corporation of the Hudson agreement. On the same day the members of the former partnership assigned the Hudson agreement to the Washington Arcade Company subject to the rights of the Union Trust Company. Pursuant to the resolution and after the filing of the proper certificate with the Department of State of Michigan, the additional shares of new stock were issued to the stockholders in proportion to their holdings.

The resolution of March 15, 1923, stated that the Hudson agreement had a value of $363,600 as of April 1, 1923, and had been paid in common stock. The Hudson agreement was entered on the books of the Washington Arcade Company as a capital item valued at $363,600, and appeared in its balance sheet for July, 1923. The Board found that the Hudson agreement had a fair market value of this sum upon March 15, 1923.

The executor of the estate of Wolf Himelhoch, in the inventory of assets filed in December, 1922, with the Probate Court of Wayne County, Michigan, valued the fifteen per cent. interest of the decedent in the Prentis lease at $52,314.31, and the Board concurred in this valuation.

Petitioner and the Washington Arcade Company consolidated their returns and claimed deductions for the fiscal years in question for the exhaustion of the Hudson agreement based upon its fair market value as of the time of the transfer. All such deductions were disallowed by respondent. The Board of Tax Appeals decided that

**487**

under the Revenue Act of 1921 (40 Stat. 1057) the basis of the asset in the hands of the transferee is the value of the asset at the time of the exchange, and allowed the deduction for the year 1923. Section 207 (a), Revenue Act of 1924 (43 Stat. 261). Since the respondent instituted no cross-appeal, we do not consider this branch of the case.

As to the claimed deductions for the subsequent years, the Board found that the effective date of the transfer was March 15, 1923; that the agreement was transferred in exchange for stock; that sections 203 (b) (4) and 204 (a) (8) and (c) of the 1924 and 1926 Acts (43 Stat. 256, 259, 260, and 44 Stat. 12, 15, 16), and sections 111 (a), 112 (b) (5), 113 (a) (8), and 114 (a) of the 1928 Act (26 U.S.C.A. § 111 note, 112 (b) (5) and note, 113 note, 114 note),[1] applied. The basis upon which exhaustion is to be allowed under the Rev-

---

[1] Revenue Act of 1924, c. 234, 43 Stat. 253, 256, 259, 260.

Section 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.

(b) * * * (4) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

Section 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that— * * *

(8) If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. * * *

(c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property. * * *

The provisions of the Revenue Act of 1926, c. 27, 44 Stat. 9, are the same in material respects.

Revenue Act of 1928, c. 852, 45 Stat. 791, 800.

Section 23. In computing net income there shall be allowed as deductions: * * *

(k) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. * *

Section 111 (a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113, and the loss shall be the excess of such basis over the amount realized. (26 U.S.C.A. § 111 note.)

(d) In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this title, shall be determined under the provisions of section 112. (26 U.S.C.A. § 111(c) and note.)

Section 112 (b) (5) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. (26 U.S.C.A. § 112 (b) (5) and note.)

Section 113 (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that— * * *

(8) If the property was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in

enue Acts of 1924, 1926 and 1928 is the same as that provided for gain or loss. Section 204 (c) of the Revenue Act of 1924 (43 Stat. 260), section 114 (a) of the Revenue Act of 1928, 26 U.S.C.A. § 114 note, printed in the margin. The Board found that as to the original lessees, no gain was realized and no loss was sustained in the exchange and that the basis was cost to the transferors. There was concededly no cost in the acquisition of the Prentis lease, and hence as to the original lessees, the basis is zero. The three beneficiaries under the will of Wolf Himelhoch acquired their respective five per cent. interests, a total of fifteen per cent. of the whole, by bequest in 1922. The Board applied the Revenue Act of 1921 and determined that the basis in the hands of these transferors is the fair market value of the property at the time of decedent's death, namely, $52,-314.31. Since this was the only cost or value shown, and it was increased by no gain, the Board decided that $52,314.31 is the basis in the hands of the Arcade Company. If the statutes cited governing transfer of property to a corporation in exchange for stock are applicable, the decision is correct.

Petitioner contends that these statutes do not apply, urging that the Hudson agreement was transferred to the Washington Arcade Company on February 20, 1923, or March 1, 1923 (the effective date of the agreement of February 20th), not in exchange for stock, but as paid-in surplus which under Article 544 of Regulations 62 is not considered income. However, the record supports the conclusion of the Board.

The agreement of February 20, 1923, did not transfer the Hudson agreement to the Washington Arcade Company, but to the Union Trust Company as trustee. The assignment was made by the Himelhochs as individuals "solely as security for the payment of the notes" of the Washington Arcade Company. The statement in the agreement that the Washington Arcade Company "has a good and indefeasible title to the leases and agreements herein assigned and transferred or intended so to be," recognizes the fact that transfers were to be made in the future, and could only refer to the Hudson agreement. The Hecker lease had already been assigned to the Washington Arcade Company. The stockholders' resolution of February 19th, authorizing the Washington Arcade Company to sell the notes, does not mention the Hudson agreement. It thus appears that the Washington Arcade Company on February 20, 1923, did not consider that the Hudson agreement had been transferred.

The resolution of the stockholders passed on March 15, 1923, in contradistinction to the resolution of February 19, 1923, specifically refers to the Hudson agreement. The agreement made on the same day puts a definite valuation on the Hudson agreement and assigns it to the corporation in consideration of its agreement to increase its stock, which afterwards was done. The transfer clearly was made on March 15, 1923, in exchange for stock to be issued in the future. The fact that on March 15, 1923, the corporation had no power to issue additional stock is immaterial. By corporate action in advance it could agree to make such increase and receive the Hudson agreement for stock to be issued when the increase should be declared. Finley Shoe & Leather Co. v. Kurtz, 34 Mich. 89.

Petitioner next contends that even if the transfer took place on March 15, 1923, the basis of the Hudson agreement to the Washington Arcade Company was $363,-600, for the reason (1) that there was a completed sale in 1922 from which the Himelhochs realized this amount, and (2) that if not in 1922, there was a realization by the Himelhochs in 1923, when the Hudson agreement was used to raise $470,400 in cash.

We disagree with each of these contentions. While the Prentis lease was sold to the J. L. Hudson Company in 1922, the contract provided for installment payments to begin on April 1, 1923. It is true that there was no initial payment under this contract during the taxable year in which the sale was made, and therefore, within the interpretation of the Bureau of Internal Revenue, the income could not be re-

the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. (26 U.S.C.A. § 113 note.)

Section 114 (a) The basis upon which exhaustion, wear and tear, and obsoles-

cence are to be allowed in respect of any property shall be the same as is provided in section 113 for the purpose of determining the gain or loss upon the sale or other disposition of such property. (26 U.S.C.A. § 114 note.)

turned on the installment basis. It does not follow that income to be received in monthly installments over a period of ten years could be reported during the year in which the sale was made. The record does not show that the Himelhochs reported it, although they now claim that the transaction was completed in 1922. While it is urged that the First National Bank loaned $125,000 in 1922 on the security of the Hudson agreement, the record contains no such statement and the Board made no such finding. The contract of 1922 was not a closed transaction.

Still less was there a realization in February, 1923. The individual Himelhochs at that time pledged the agreement as security. The notes of the Washington Arcade Company and the Hecker lease were part of the basis of the loan. Title to the agreement was not transferred.

The Board was correct in its decision. The statutes as to exchange for stock squarely apply to these transactions, and the basis was cost in the hands of the transferors. The petitioner neither gained nor lost by the transaction of March 15, 1923. Cf. Labrot v. Burnet, Commissioner, 61 App.D.C. 47, 57 F.(2d) 413; Mount v. Commissioner, 48 F.(2d) 550 (C.C.A.2); Pugh Co., Inc., v. Helvering, Commissioner, 63 App.D.C. 172, 70 F.(2d) 776; King v. United States, 79 F.(2d) 453 (C.C.A.4).

The decision of the Board of Tax Appeals is affirmed.